DIANA PALACIOS (State Bar No. 290923)
 dianapalacios@dwt.com
CRISTINA M. SALVATO (State Bar No. 295898)
 tinasalvato@dwt.com
JOEL L. RICHERT (State Bar No. 327116)
 joelrichert@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendants
NETFLIX, INC., TITMOUSE, INC.,
LOL SEND, INC., FREMULON, LLC,
UNIVERSAL TELEVISION LLC,
HAZY MILLS PRODUCTIONS, INC.,
and 3 ARTS ENTERTAINMENT, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE HARA p/k/a VICKY VOX,<br><br>Plaintiff,<br><br>vs.<br><br>NETFLIX, INC., TITMOUSE, INC.,<br>LOL SEND, INC., FREMULON, LLC,<br>UNIVERSAL TELEVISION, LLC,<br>HAZY MILLS PRODUCTIONS, INC., 3<br>ARTS ENTERTAINMENT, LLC,<br><br>Defendants. | Case No. **2:23-cv-03456-RGK-AS**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:      August 14, 2023<br>Time:      9:00 a.m.<br>Ctrm:      850<br><br>Assigned to the Hon. R. Gary Klausner<br><br>Action Filed:  May 5, 2023 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 14, 2023 at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 850 before the Honorable R. Gary Klausner of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, defendants Netflix, Inc., Titmouse, Inc., LOL Send, Inc., Fremulon, LLC, Universal Television LLC, Hazy Mills Productions, Inc., and 3 Arts Entertainment, LLC ("Defendants") will and hereby do move this Court for an order dismissing with prejudice the Complaint filed by plaintiff Lance Hara p/k/a Vicky Vox ("Plaintiff" or "Vicky Vox") for failure to state a claim under Fed. R. Civ. P. 12(b)(6) for the following reasons:

1. Plaintiff's claim for false endorsement under the Lanham Act is barred by the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which applies where a mark is not used as a source-identifier, but solely for expressive purposes. Under the *Rogers* test, Plaintiff's false endorsement claim must be dismissed where the alleged use of Plaintiff's likeness has artistic relevance to the underlying work and does not expressly mislead consumers about the source or content of the work.

2. Plaintiff's Second, Third, and Fourth claims for violations of her statutory and common law right of publicity and for misappropriation fail to state a claim because:

    a. Plaintiff has failed to sufficiently allege that Defendants used her identity, name, or likeness in the Series or the Official Teaser;

    b. the Series and Official Teaser are expressive works protected under the First Amendment;

    c. any purported use of Plaintiff's likeness in the Series is transformative and thus afforded protection under the First Amendment, and because

MOTION TO DISMISS

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the Series is transformative, the Official Teaser is likewise transformative and afforded full First Amendment protection;

d. Plaintiff is a public figure and has failed to allege or prove by "clear and convincing evidence" that Defendants acted with actual malice in depicting a cartoon drag queen that may resemble Plaintiff; and

e. under the incidental use defense, the brief inclusion of a drag queen that may bear some likeness to Plaintiff is too fleeting and inconsequential to give rise to liability as a matter of law, and is thus nonactionable and incidental.

For each of these reasons, the Court should grant Defendants' motion to dismiss Plaintiff's claims with prejudice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place telephonically on July 13, 2023 to accommodate Plaintiff's counsel's schedule.

This Motion is based on this Notice; the attached Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice, and any other matters of which this Court may take judicial notice; all pleadings, files, and records in this action; and such argument as this Court may receive at the hearing on this Motion.

DATED: July 19, 2023

DAVIS WRIGHT TREMAINE LLP
DIANA PALACIOS
CRISTINA M. SALVATO
JOEL L. RICHERT


By: _____/s/ Diana Palacios_____
             Diana Palacios

Attorneys for Defendants

NETFLIX, INC., TITMOUSE, INC.,
LOL SEND, INC., FREMULON, LLC,
UNIVERSAL TELEVISION LLC,
HAZY MILLS PRODUCTIONS, INC.,
and 3 ARTS ENTERTAINMENT, LLC

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................. 2

    A.    Q-Force ................................................................................... 2

    B.    Vicky Vox .............................................................................. 3

    C.    This Action ............................................................................. 3

III.  LEGAL STANDARD ON A 12(B)(6) MOTION ............................ 3

IV.   THE *ROGERS* TEST MANDATES DISMISSAL OF PLAINTIFF'S
    FALSE ENDORSEMENT CLAIM ................................................. 4

    A.    Ms. Vox's Likeness has Artistic Relevance to the Series ................... 5

    B.    The Alleged Use of Ms. Vox's Likeness is Not Explicitly
        Misleading .............................................................................. 6

    C.    The Protections Afforded under *Rogers* Extend to the Official
        Teaser .................................................................................... 8

V.    PLAINTIFF'S RIGHT OF PUBLICITY AND MISAPPROPRIATION
    CLAIMS FAIL ................................................................................. 8

    A.    Defendants Did Not Use Plaintiff's Identity, Name or Likeness ......... 9

    B.    The First Amendment Bars Claims Arising from Expressive
        Works .................................................................................. 11

    C.    Plaintiff's Claims Fail Because the Alleged Depiction is
        Transformative ..................................................................... 13

    D.    Plaintiff's Claims Fail Because She Has Not Alleged Actual
        Malice. ................................................................................ 14

        1.    The Official Teaser is noncommercial speech. ..................... 14

        2.    Defendants did not act with actual malice. ........................... 15

    E.    Plaintiff's Claims are Independently Barred by the Incidental
        Use Defense. ........................................................................ 16

VI.   CONCLUSION ............................................................................... 17

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aligo v. Time-Life Books, Inc.*,
No. C 94-20707 JW, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ........... 16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................... 3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................... 3, 4

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)......................................................................... 14

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ............................................. 4, 5, 6, 7

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) ...............................................................4

*Cher v. Forum Int'l, Ltd.*,
692 F.2d 634 (9th Cir. 1982) ........................................................ 12

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) .................................................................. 13

*Daly v. Viacom, Inc.*,
238 F. Supp. 2d 1118 (N.D. Cal. 2002) ......................................... 11

*De Havilland v. FX Networks, LLC*,
21 Cal. App. 5th 845 (2018) ...................................... 11, 12, 13, 14

*Dodds v. Am. Broad. Co.*,
145 F.3d 1053 (9th Cir. 1998) ...................................................... 15

*Dora v. Frontline Video, Inc.*,
15 Cal. App. 4th 536 (1993) ...........................................................8

*Dworkin v. Hustler Magazine Inc.*,
867 F.2d 1188 (9th Cir. 1989) ...................................................... 15

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008) ........................................................ 5, 6

*Eastwood v. Nat'l Enquirer, Inc.*,
  123 F.3d 1249 (9th Cir. 1997) ........................................................ 15

*ETW Corp. v. Jireh Pub., Inc.*,
  332 F.3d 915 (6th Cir. 2003) ..........................................................7

*Gonzalez v. Planned Parenthood of Los Angeles*,
  759 F.3d 1112 (9th Cir. 2014) ..........................................................4

*Guglielmi v. Spelling-Goldberg Prods.*,
  25 Cal. 3d 860 (1979) ........................................................... 11, 12

*Harte-Hank Commc'ns v. Connaughton*,
  491 U.S. 657 (1989) ................................................................ 15

*Hill v. NCAA*,
  7 Cal. 4th 1 (1994) ................................................................ 16

*Hoffman v. Capital Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 2001) ..................................................... 14, 15

*Ileto v. Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003) ..........................................................4

*Johnson v. Harcourt, Brace, Jovanovich, Inc.*,
  43 Cal. App. 3d 880 (1974) ......................................................... 16

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ..........................................................4

*Lohan v. Perez*,
  924 F. Supp. 2d 447 (E.D.N.Y. 2013) ................................................ 17

*Man v. Warner Bros. Inc.*,
  317 F. Supp. 50 (S.D.N.Y. 1970)..................................................... 17

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)................................................................ 15

*Mattel, Inc. v. MCA Recs., Inc.*,
  296 F.3d 894 (9th Cir. 2002) ........................................................ 5, 6

MOTION TO DISMISS
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
   74 F. Supp. 3d 1134 (N.D. Cal. 2014) ................................................................8

*Polydoros v. Twentieth Century Fox Film Corp.*,
   67 Cal. App. 4th 318 (1997) ......................................................... 9, 10

*Preston v. Martin Bregman Prods., Inc.*,
   765 F. Supp. 116 (S.D.N.Y. 1991) ............................................ 16, 17

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) ................................................................ 11

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) .................................................... *passim*

*Ross v. Roberts*,
   222 Cal. App. 4th 677 (2013) ....................................................8

*Sarver v. Chartier*,
   813 F.3d at 903 ................................................................ 11, 12

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010), *as modified on denial of reh'g*
   (Feb. 24, 2010) ................................................................ 9, 14, 15

*Stilson v. Reader's Digest Assn., Inc.*,
   28 Cal. App. 3d 270 (1972) ......................................................8

*Tamkin v. Cbs Broadcasting, Inc.*,
   193 Cal. App. 4th at 141, 146-47 ................................................ 10

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
   875 F.3d 1192 (9th Cir. 2017) .................................................... 5, 8

*Winter v. DC Comics*,
   30 Cal. 4th 881 (2003) ............................................................ 13

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) .......................................... 16

*Zacchini v. Scripps-Howard Broad. Co.*,
   433 U.S. 562 (1977) ................................................................ 16

vi

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

15 U.S.C. § 1125(a)..........................................................................................4

California Civil Code
    § 3344....................................................................................................9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................3

**Constitutional Provisions**

United States Constitution
    First Amendment.......................................................................*passim*

**Other Authorities**

Restatement (Second) of Torts § 652C Comment d .............................. 16

MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

*Q-Force* (the "Series") is a fanciful animated television series that subverts the traditional ultra-masculine spy genre and instead focuses on a cast of misfit LGBTQ spies who come together to fight international crime while simultaneously navigating queer life in West Hollywood, California. In the process, the Series lovingly pokes fun at gay stereotypes, while uplifting queer characters and community. In order to provide authenticity of its depiction of modern queer life, the Series is often set in traditionally queer spaces, like gay bars, and includes a cast of peripheral characters, including drag queens.

Episode 5 of the Series includes a brief scene ("Scene") in which several unnamed drag queens (who never speak as they have no dialog) are sitting at a West Hollywood gay bar with one of the Series' main characters. The Scene was also featured in an "Official Teaser" for the Series that was posted online. Based on this fleeting scene, plaintiff Vicky Vox ("Plaintiff") – who is a famous drag queen based in Hollywood, California – asserts that Defendants have used her likeness without her permission. On this basis Plaintiff has brought several baseless claims against Netflix, Inc., Titmouse, Inc., LOL Send, Inc., Fremulon, LLC, Universal Television LLC, Hazy Mills Productions, Inc., and 3 Arts Entertainment, LLC (collectively, "Defendants").

Plaintiff's Complaint fails to state a claim for relief for several reasons. *First*, Plaintiff's false endorsement claim under the Lanham Act is barred by the First Amendment protections set forth in *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989) because the alleged use of Plaintiff's likeness is artistically relevant to the Series and not explicitly misleading as to the source or content of the work. *Second*, Plaintiff's right of publicity and misappropriation claims fail because Plaintiff has failed to properly allege that the cartoon drag queen depicted in the Scene in the Series and Official Teaser uses Plaintiff's name, image, or likeness.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Third*, Plaintiff's right of publicity and misappropriation claims are barred under well-established First Amendment protections that prevent individuals from using these torts to control their portrayal in expressive works or promotional materials for those works. *Fourth*, Plaintiff's right of publicity and misappropriation claims separately fail because Defendants' depiction of an animated drag queen that may bear some resemblance to Plaintiff in the context of the Series is transformative and thus protected under the First Amendment. *Fifth*, Plaintiff's right of publicity and misappropriation claims fail because Plaintiff has not – and cannot – show that Defendants acted with actual malice and intentionally included an animated drag queen that may resemble Plaintiff's likeness with the purpose of deceiving viewers into thinking that Plaintiff authorized the use of her likeness, or is otherwise associated with the Series. *Sixth*, Plaintiff's right of publicity and misappropriation claims fail because the fleeting shot of an animated drag queen who may bear some likeness to Plaintiff is barred by the incidental use defense. Because each of these issues may be determined on the pleadings, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

## II.    STATEMENT OF FACTS

### A.    Q-Force

The Series is a 10-episode animated television series, which is available for streaming on the Netflix streaming service. *See* Netflix.com Webpage, Declaration of Diana Palacios ("Palacios Decl."), Ex. C, Dkt. 29-4. The Series follows "[a] gay superspy and his scrappy LGBTQ squad" as they "fight to prove themselves to the agency that underestimated them," and stars Sean Hayes, Wanda Sykes, and Laurie Metcalf, among other notable celebrities. *See id.*

In June 2021, a minute-long "Official Teaser" for the Series was posted to the Netflix YouTube channel (https://www.youtube.com/watch?v=Fk9s-zTbq28). Compl. ¶ 17; Netflix YouTube Webpage, Palacios Decl., Ex. B, Dkt. 29-3. The

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

opening shot of the Official Teaser is a five-second excerpt of the Scene that appears in Episode 5 of the Series, and shows one of the main characters having cocktails in a West Hollywood gay bar surrounded by a group of unnamed drag queens wearing stereotypical drag outfits – big hair and slinky dresses – and one mustachioed individual dressed in a flamboyant suit. *See* Episode 5 of *Q-Force*, Palacios Decl., Ex. A at [01:42-01:48], Dkt. 29-2.

### B.   Vicky Vox

Plaintiff "is a well-known Drag Queen in Hollywood." Compl. ¶ 12. In addition to hosting drag events, including at the Roosevelt Hotel in Hollywood and Hamburger Mary's in West Hollywood, Plaintiff is well known for her drag band DWV. *Id.* ¶ 12. Plaintiff has received a nomination for Best Supporting Actress in a Musical for her role in a theatre production, as well as a nomination for iHeart Radio's Best Spirituality and Religion Podcast for her series *Doing Great with Vicky Vox*. *Id.* ¶ 13. In addition to these accolades, Plaintiff has appeared in a number of reality television series, *id.* ¶ 13, as well as music videos, award shows, and films, and has served as a brand ambassador for a cosmetics company.  *Id.* ¶ 14.

### C.   This Action

On May 5, 2023, Plaintiff commenced this action, asserting four claims against Defendants for unfair competition and false endorsement under the Lanham Act, violation of California's common law and statutory right of publicity, and invasion of privacy by appropriation. *See generally* Compl. ¶¶ 23-50.

## III.   LEGAL STANDARD ON A 12(B)(6) MOTION

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts pleaded must support "more than a sheer possibility that a defendant has acted unlawfully"; they must "allow[] the court to draw the reasonable inference that the

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  defendant is liable for the misconduct alleged." *Id*. The Court must then "determine

2  whether the facts alleged in the complaint are sufficient to show that the plaintiff

3  has a 'plausible claim for relief.'" *Id*. at 211 (*quoting Twombly*, 550 U.S. at 557).

4  While the Court must presume that the facts alleged by the plaintiff are true, the

5  Court is not required to "accept any unreasonable inferences or assume the truth of

6  legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349

7  F.3d 1191, 1200 (9th Cir. 2003).

8      In deciding a 12(b)(6) motion, the Court may consider expressive works that

9  are incorporated by reference in the complaint. *Brown v. Elec. Arts, Inc.*, 724 F.3d

10  1235, 1248 n. 7 (9th Cir. 2013) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th

11  Cir. 2005)); *see also* Request for Judicial Notice, Dkt. 29-10. The Court need not

12  accept as true allegations that contradict matters properly subject to judicial notice

13  or documents incorporated by reference into the complaint. *Gonzalez v. Planned*

14  *Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

15  **IV.    THE *ROGERS* TEST MANDATES DISMISSAL OF PLAINTIFF'S**

16  **FALSE ENDORSEMENT CLAIM**

17      Section 43(a) of the Lanham Act prohibits a false representation which "is

18  likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

19  connection, or association of such person with another person or as to the

20  sponsorship or approval of his or her goods, services, or commercial activities by

21  another person[.]" 15 U.S.C. § 1125(a)(1)(A). The Ninth Circuit has allowed

22  celebrities to invoke § 43(a) to challenge the unauthorized use of "a public figure's

23  persona, likeness, or other uniquely distinguishing characteristic." *Brown v.*

24  *Electronic Arts, Inc.*, 724 F.3d at 1239. In such cases, the "determinative issue"

25  usually is whether the defendant's use creates a likelihood of consumer confusion –

26  that is, whether the defendant's use is likely to suggest to consumers that the

27  celebrity has sponsored or approved the defendant's product. *Cairns v. Franklin*

28  *Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002).

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

But where a false endorsement claim arises from the alleged use of the plaintiff's likeness *in an expressive work*, courts have recognized that the ordinary likelihood-of-confusion test "fails to account for the full weight of the public's interest in free expression." *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). To prevent plaintiffs from misusing the Lanham Act to stifle expressive works, the Ninth Circuit has adopted the First Amendment-derived test set forth in *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), known as the *Rogers* test. *See, e.g.*, *Brown*, 724 F.3d at 1239. As the Ninth Circuit explained in *Brown v. Electronic Arts, Inc.*, the *Rogers* test is "[t]he only relevant legal framework" for balancing the public's right to be free from consumer confusion about the plaintiff's affiliation with the work against the defendant's First Amendment rights in this context, and affirmed the dismissal of plaintiff's claims on the pleadings. 724 F.3d at 1240-42.

The *Rogers* test has two parts. *First*, the Court examines whether the use of the trademark has any artistic relevance to the underlying work. *Id. Second*, the Court evaluates whether the use "explicitly misleads" as to the source or the content of the work. *Id.*

Pursuant to this test, Plaintiff's allegations cannot survive dismissal because the alleged use of her likeness has artistic relevance to the underlying work and does not explicitly mislead as to the source or the content of the work.

### A. Ms. Vox's Likeness has Artistic Relevance to the Series

Applying the *Rogers* test, the first prong considers whether the alleged use has artistic relevance to the underlying work. *Empire*, 875 F.3d at 1196. For this prong, the "bar is set low: 'the level of relevance merely must be above zero.'" *Id.* at 1198 (quoting *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008)). This first prong of the *Rogers* test "distinguishes cases in which the use of the mark has *some* artistic relation to the work from cases in which the use of the mark is *arbitrary*." *Empire*, 875 F.3d at 1198 (emphases added). This

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"black-and-white rule" allows a straightforward application of *Rogers* by limiting the court's "need to engage in artistic analysis in this context." *Brown*, 724 F.3d at 1243 (affirming dismissal of trademark claims). For example, in *E.S.S. Ent. 2000,* the Ninth Circuit held that the use of the name of a strip club in the scenery of a video game was artistically relevant because the goal was to develop a cartoon-style parody of East Los Angeles. *E.S.S. Ent. 2000*, 547 F.3d at 1100. Similarly, in *Brown*, 724 F.3d at 1243, the Ninth Circuit held that the use of the plaintiff's likeness was artistically relevant to recreate one of the teams in the game.

As in *E.S.S. Ent. 2000* and *Brown,* any alleged use of Plaintiff's likeness is artistically relevant to create a realistic West Hollywood. In the Scene at issue, the main characters meet for brunch at a drag bar in West Hollywood and converse with a character at another table while several drag queens (including one allegedly resembling Ms. Vox) are briefly visible. *See* Episode 5 of *Q-Force*, Palacios Decl., Ex. A at [01:42-01:48], Dkt. 29-2; Netflix YouTube Webpage, Palacios Decl., Ex. B, Dkt. 29-3. Plaintiff admits that she is a "well-known Drag Queen in Hollywood," Compl. ¶ 12, and alleges that her likeness was used in "a reductive show" about "the LGBTQ+ community," *id* ¶¶ 20, 22. The alleged use is therefore at least minimally relevant to the subject matter of the show, creates a realistic West Hollywood, and is far from arbitrary.

**B.     The Alleged Use of Ms. Vox's Likeness is Not Explicitly Misleading**

On the second prong of the *Rogers* test, a court evaluates whether the alleged use "explicitly mislead[ ] [consumers] as to the source or the content of the work." *Brown*, 724 F.3d at 1245. To "explicitly mislead" in this context, a defendant must make an "overt claim" or "explicit indication" that the plaintiff endorsed or was involved with the work. *Rogers*, 875 F.2d at 1001. The Ninth Circuit has made clear that a "the mere use of a trademark alone cannot suffice to make such use explicitly misleading." *E.S.S.*, 547 F.3d at 1100. *See also MCA Records*, 296 F.3d at 902 (explaining that if use of the alleged mark alone was sufficient to expressly mislead,

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"it would render *Rogers* a nullity"); *Rogers*, 875 F.2d at 999-1000 ("[T]he slight risk that . . . use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and [in cases where there is no explicit misleading] the Lanham Act is not applicable.").

This requirement of an "overt claim" applies even if consumers mistakenly believe there is some connection between the plaintiff and the defendant's work. In *Rogers*, for example, the court held the defendants did not "explicitly mislead" despite evidence that "some members of the public would draw the incorrect inference that Rogers had some involvement in the film." *Rogers*, 875 F.2d at 997, 1001. Similarly, in *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 928 n.19 (6th Cir. 2003), the Sixth Circuit found that a painting of Tiger Woods did not explicitly mislead despite evidence that a majority of survey respondents believed the golfer had "an affiliation or connection" with the defendant's work "or that he has given his approval or has sponsored it." *See also Brown*, 724 F.3d at 1246 ("Even if Brown could offer a survey demonstrating that consumers of [defendant's work] believed that Brown endorsed the game, that would not support the claim that the use was explicitly misleading to consumers.").

Plaintiff fails to allege, and cannot demonstrate, that Defendants have engaged in any conduct that explicitly misleads consumers as to the source or content of the Series. Plaintiff points to no "overt claim" or "explicit indication" by Defendants that Plaintiff endorsed or was involved with the Series. In fact, the Series does not even use Plaintiff's name or make any statement about Plaintiff. Rather, Plaintiff alleges nothing more than the mere use of Plaintiff's likeness "in a profile shot of a cartoon representation of Ms. Vox's face, followed by four seconds of a full-body shot of the same cartoon representation of Ms. Vox." Compl. ¶ 24. These conclusory allegations of mere use are insufficient to avoid dismissal under

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  the *Rogers* test. Accordingly, Plaintiff's false endorsement claim under the Lanham

2  Act should be dismissed.

3      **C.      The Protections Afforded under *Rogers* Extend to the Official**

4          **Teaser**

5          It is also well-established that the *Rogers* test extends to advertisements of an

6  expressive work like the "Official Teaser" at issue here. Indeed, the Ninth Circuit

7  has applied the *Rogers* test to protect promotional materials relating to a television

8  series, even consumer goods, on the ground that "it requires only a minor logical

9  extension of the reasoning of *Rogers* to hold that works protected under its test may

10  be advertised and marketed by name." *Twentieth Century Fox Television v. Empire*

11  *Distribution, Inc.*, 875 F.3d 1192, 1196–97 (9th Cir. 2017) (noting that the *Rogers*

12  case itself concerned both a movie with an allegedly infringing title and its

13  advertising and promotion). *See also Mil-Spec Monkey, Inc. v. Activision Blizzard,*

14  *Inc.*, 74 F. Supp. 3d 1134, 1143 (N.D. Cal. 2014) (use of mark in promotional trailer

15  for a game was protected under Rogers test and did not "diminish its artistic

16  relevance within the game"). There is thus no question that the *Rogers* test extends

17  to the alleged use of Plaintiff's likeness in the "Official Teaser" for the Series.

18  **V.    PLAINTIFF'S RIGHT OF PUBLICITY AND MISAPPROPRIATION**

19      **CLAIMS FAIL**

20          Appropriation of a plaintiff's name or likeness has two aspects, the difference

21  between which stem from "the nature of the plaintiff's right and the nature of the

22  resulting injury." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 541 (1993).

23  The first type of appropriation is the right of publicity. "The right of publicity

24  protects an individual's right to profit from the commercial value of his or her

25  identity." *Ross v. Roberts*, 222 Cal. App. 4th 677, 684 (2013). California recognizes

26  both a common law and statutory right of publicity. *Id.* The second type "is the

27  appropriation of the name and likeness that brings injury to the feelings, that

28  concerns one's own peace of mind, and that is mental and subjective." *Dora*, 15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Cal. App. 4th at 542 (citing *Stilson v. Reader's Digest Assn., Inc.*, 28 Cal. App. 3d 270, 273 (1972)); *see* Compl. ¶ 47 (Defendants' use of Plaintiff's likeness "has caused Plaintiff injury to her human dignity and self-esteem and has caused her mental distress."). To state a common law cause of action, a plaintiff must allege facts showing: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679 (2010), *as modified on denial of reh'g* (Feb. 24, 2010).

California's statutory right of publicity likewise prohibits any person from "knowingly us[ing] another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent[.]" Civ. Code § 3344(a).

Plaintiff has not and cannot plead facts sufficient to state a claim for multiple reasons.

### A.    Defendants Did Not Use Plaintiff's Identity, Name or Likeness.

Plaintiff's Second, Third, and Fourth claims fail at the outset because she has failed to allege the type of "use" section 3344 or the common law protect against. Even where a relationship between a real person and a fictional television character appears to be plausible, California law is clear that right of publicity claims must be rejected "when there is merely alleged to be some resemblance between an actual person and a character in a work of fiction." *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 322 (1997). In *Polydoros*, for example, plaintiff Michael Polydoros was a schoolmate of the director of the film *The Sandlot*, and alleged that a character in the film named Michael Palledorous misappropriated his likeness. Although plaintiff and the fictional character shared a similar name, grew up in a similar childhood setting, enjoyed playing baseball in a sandlot and

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

swimming in the community pool, had a brash nature, and the plaintiff had worn clothing similar to the fictional character as a child, the court found his statutory and common law right of publicity claims failed as a matter of law because those "rudimentary similarities . . . do not make 'The Sandlot' a film about appellant's life." *Id.* at 323.

The decision in *Tamkin* is also instructive. There, two plaintiffs who were married to each other brought an action for defamation and invasion of privacy based on allegations that two *CSI: Crime Scene Investigation* characters involved in a murder shared the same first and last names as both spouses, worked in similar industries, that the husband was "[m]id to late-30s," "attractive," and "used prescription toothpaste for periodontal disease" like the male plaintiff, and that the wife "shared the hobbies of running and wine drinking" with the female plaintiff. 193 Cal. App. 4th at 141, 146-47. Notwithstanding these similarities, the court held that, as a matter of law, a reasonable person would not believe the characters actually were the plaintiffs: according to the court, the plaintiffs' claims failed, in part, because "none of the physical characteristics are particularly unique" and "would apply to many . . . actors on television shows." *Id.* at 147-48.

Here, unlike the plaintiffs in *Polydoros* and *Tamkin*, Plaintiff has failed to allege even the most "rudimentary similarities" between herself and the animated drag queen portrayed in the Series. *See Polydoros*, 67 Cal. App. 4th at 323; *see also Tamkin*, 193 Cal. App. 4th at 147-48. Even if she had identified any similarities (she has not), Plaintiff's name is not used in the Official Teaser or Series. In fact, none of the drag queens in the Scene are named. None of the drag queens speak. Any similarities between Plaintiff and the animated drag queen in the Series and Official Teaser are superficial at best. Because Plaintiff has failed to allege any – let alone sufficient – similarities between her and the cartoon drag queen, her claims are subject to dismissal.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## B.     The First Amendment Bars Claims Arising from Expressive Works.

Assuming, for the sake of argument, that Plaintiff has sufficiently alleged that the animated drag queen portrayed in the Series is Plaintiff, because the Series is an expressive work, Plaintiff's right of publicity claims are barred by the First Amendment. The First Amendment bars plaintiffs from using the right of publicity tort to control their portrayal in expressive works. *See, e.g.*, *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 857-59 (2018) (First Amendment barred claim based on TV docudrama); *Sarver*, 813 F.3d at 903 (right of publicity claims based on use of name or likeness in expressive works are "presumptively unconstitutional"); *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 871-72 (1979) (Bird, C.J., concurring) (claim "may not be maintained" where noncommercial speech involved); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (dismissing right of publicity claim arising from reality television program on First Amendment grounds).

In *Sarver*, the Ninth Circuit held that the First Amendment barred a right of publicity claim asserted by an American veteran who alleged he was the subject of *The Hurt Locker*, a movie docudrama about an American soldier in Iraq. 813 F.3d at 905. In support of its holding, the court stated that "*The Hurt Locker* is speech that is fully protected by the First Amendment, which safeguards the storytellers and artists who take the raw materials of life – including the stories of real individuals, ordinary or extraordinary – and transform them into art, be it articles, books, movies, or plays." *Id.* As the court noted, "[c]ontent-based laws . . . that target speech . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 903 (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)). Because the veteran had no "compelling state interest in preventing the

MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

defendants' speech," the court concluded that "applying California's right of publicity in this case would violate the First Amendment." *Id.* at 906.

Similarly, in *De Havilland*, the California Court of Appeal made clear that the First Amendment provides virtually an absolute bar to right of publicity claims arising from expressive works. As the court observed:

> Books, films, plays, and television shows often portray real people. Some are famous and some are just ordinary folks. Whether a person portrayed in one of these expressive works is a world-renowned film star – 'a living legend' – or a person no one knows, she or he does not own history. Nor does she or he have the legal right to control, dictate, approve, disapprove, or veto the creator's portrayal of actual people.

21 Cal. App. 5th at 850. Like the film in *Sarver* and the television show in *De Havilland*, the Series is an expressive work entitled to the highest degree of First Amendment protection. Thus, as a matter of law, the Series is allowed the freedom to depict Plaintiff "without acquiring [her] rights." *See id.* at 861.

The First Amendment likewise protects any alleged use of Plaintiff's likeness in promotional materials for the Series, including the Official Teaser. *See, e.g.*, *Guglielmi*, 25 Cal. 3d at 873 ("Since the use of Valentino's name and likeness in the film was not an actionable infringement of [his] right of publicity, the use of his identity in advertisements for the film is similarly not actionable."); *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) (holding use of celebrity's name and likeness "in advertising which is merely an adjunct of the protected publication" is likewise protected by the First Amendment); *De Havilland*, 21 Cal. App. 5th at 861-62 ("Nor does the use of de Havilland's name . . . in social media promotion for the miniseries support de Havilland's claims for violation of her right of publicity."). Accordingly, Defendants have the right to use Plaintiff's likeness to promote the Series, including in the Official Teaser. Because the Series and Official Teaser are

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

protected by the First Amendment as expressive works, Plaintiff's claims must be stricken.

**C.     Plaintiff's Claims Fail Because the Alleged Depiction is Transformative.**

Separately, any alleged depiction of Plaintiff in the Series is transformative and thus entitled to First Amendment protection. "'[W]hen an artist is faced with a right of publicity challenge to his or her work, he or she may raise as [an] affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame.'" *Winter v. DC Comics*, 30 Cal. 4th 881, 890 (2003) (quoting *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407 (2001)). For example, in *De Havilland*, the Court of Appeal held that a television series that portrayed a famous celebrity was sufficiently transformative, and thus was entitled to First Amendment protection because the series' "marketability and economic value" did not "derive primarily from [celebrity's] fame" but rather "[came] principally from … the creativity, skill, and reputation" of the series' creators and actors." 21 Cal. App. 5th at 864 ("While viewers may have 'tuned in' to see these actors and watch this Hollywood tale, there is no evidence that de Havilland as a character was a significant draw."). Further, "[i]f the challenged work is transformative, the way it is advertised cannot somehow make it nontransformative." *Winter*, 30 Cal. 4th at 891.

Here, the animated drag queen alleged to resemble Plaintiff appears on screen briefly in one scene, in one episode of the 10-episode Series. Plaintiff's attempt to argue that the "marketability and economic value" of the Series derives primarily from this alleged fleeting use of Plaintiff's likeness and her celebrity status strains credulity. Rather, the media attention and "marketability and economic value" of the Series comes principally from "the creativity, skill, and reputation," of the Series' creators, celebrity actors, and the novel concept of the Series as a whole.

13

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Moreover, like *De Havilland*, while viewers may have been drawn to view the Series in part because its settings and characters are evocative of familiar West Hollywood locales and personas, Plaintiff has presented no evidence that a fleeting depiction of an animated drag queen resembling Plaintiff was a significant draw. Finally, because the Series itself is transformative, any advertising for the Series, including the Official Teaser, is likewise transformative, and thus afforded First Amendment protection.

### D.     Plaintiff's Claims Fail Because She Has Not Alleged Actual Malice.

"In many right of publicity cases, the question of actual malice does not arise, because the challenged use of the celebrity's identity occurs in an advertisement that 'does no more than propose a commercial transaction' and is clearly commercial speech." *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)). However, where, as here, the underlying conduct is noncommercial speech subject to First Amendment protection, a celebrity plaintiff is required to provide clear and convincing evidence that defendants acted with actual malice. *See Stewart*, 181 Cal. App. 4th at 689.

### 1.     The Official Teaser is noncommercial speech.

As explained above, the Series and Official Teaser are expressive speech and thus afforded full First Amendment protection. *See supra* Section V.B. Moreover, to the extent the Official Teaser serves some commercial purpose apart from promoting the Series, "its supposed 'commercial purpose' would be 'inextricably entwined' with its expressive elements," namely, the humorous commentary on gay stereotypes and establishing the particular locale and cultural setting in which the Series takes place. *See Stewart*, 181 Cal. App. 4th at 688; *see also Hoffman*, 255 F.3d at 1185-86 (holding altered photograph of celebrity used in a featured article "does not fall outside of the protection of the First Amendment because it may help to sell copies" or "draw attention to the for-profit magazine in which it appears");

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*see also Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1197-98 (9th Cir. 1989) (holding although defendant may have published a magazine feature solely or primarily to increase circulation and therefore profits, article was not purely commercial or for purposes of advertising). Thus, the Series and Official Teaser are noncommercial speech protected by the First Amendment.

### 2.   Defendants did not act with actual malice.

As a celebrity and public figure, *see* Compl. ¶¶ 12-14, to prevail on her claims, Plaintiff is required to prove by clear and convincing evidence that Defendants acted with actual malice. *Stewart*, 181 Cal. App. 4th at 689 (striking right of publicity claims where famous musicians alleging unauthorized use of names arising out of magazine feature enclosed by cigarette advertising failed to provide clear and convincing evidence of actual malice). To show actual malice, Plaintiff must demonstrate that Defendants intended to create the false impression in the minds of the viewers that Plaintiff actually authorized the use of her likeness in the Series or Official Teaser. *See Hoffman*, 255 F.3d at 1187; *see also Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1251 (9th Cir. 1997) ("actual malice" requires "a reckless disregard for the truth," or "a 'high degree of awareness of … probable falsity'") (quoting *Harte-Hank Commc'ns v. Connaughton*, 491 U.S. 657, 666-67 (1989)). It is not enough to show that Defendants unknowingly misled readers into thinking Plaintiff had authorized the use of her likeness. *See Hoffman*, 255 F.3d at 1187. Mere negligence is not enough to demonstrate actual malice. *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1063 (9th Cir. 1998) (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991)). "[S]ubjective or actual intent is required and . . . 'there is no actual malice where journalists unknowingly mislead the public.'" *Id.* at 1064 (quoting *Eastwood*, 123 F.3d at 1256). Further, this showing must be made to a "clear and convincing" standard even at the pleading stage: Plaintiff must allege facts which could show actual malice, not "general

MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

allegations that a defendant should have known or should have investigated the truth." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).

Here, beyond conclusory allegations, Plaintiff has not shown that Defendants knowingly used an animated drag queen in the Series and Official Teaser with the intention of misleading viewers into thinking that Plaintiff had authorized the use of her likeness, or is in anyway affiliated with the Series. Accordingly, Plaintiff's claims should be dismissed.

**E.     Plaintiff's Claims are Independently Barred by the Incidental Use Defense.**

Plaintiff's claims are independently barred because "the mere incidental mention of the plaintiff's name in a book or a motion picture is not [a violation of the plaintiff's right of publicity]." *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 574 n.11 (1977). The California Supreme Court has agreed that "mere incidental use [is] not actionable." *Hill v. NCAA*, 7 Cal. 4th 1, 26 n.6 (1994) (quoting Restatement (Second) of Torts § 652C cmt. d). The incidental use defense is specifically designed to prevent "unconstitutional interference" with the exercise of free speech. *Zacchini*, 433 U.S. at 574 n.11. Indeed, requiring producers to pay "anyone briefly depicted or referred to [in an expressive work] . . . would unduly burden expressive activity." *Aligo v. Time-Life Books, Inc.*, No. C 94-20707 JW, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994). For example, in *Aligo*, the court found that the use of a photograph of plaintiff in an infomercial for a rock music anthology was "too fleeting and inconsequential as a matter of law to give rise to liability" for violation of plaintiff's common law or statutory right of publicity. *Id.* at *4; *see also Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 895 (1974) (dismissing right-of-publicity claim because brief mention of plaintiff in a textbook was incidental).

*Preston v. Martin Bregman Prods., Inc.*, 765 F. Supp. 116, 119 (S.D.N.Y. 1991), is also instructive. In that case, the plaintiff's image was shown for nine

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

seconds in the opening scene of a movie. *Id.* The court dismissed her right of publicity claim, observing that "[h]er appearance contributes nothing of significance to the movie's story line, although it is incidental in setting the atmosphere[.]" *Id.*; *see also, Lohan v. Perez*, 924 F. Supp. 2d 447, 455-56 (E.D.N.Y. 2013) (dismissing right of publicity claim because of, among other things, the "isolated nature of the use" of plaintiff's name in a song); *Man v. Warner Bros. Inc.*, 317 F. Supp. 50, 53 (S.D.N.Y. 1970) (finding nonactionable incidental use where film about Woodstock music festival included 45 seconds of plaintiff's performance).

Here, the fleeting shot of an animated drag queen who may bear some likeness to Plaintiff is a nonactionable, incidental use. Like the photograph in *Aligo* and the image in *Preston,* in the Official Teaser, the West Hollywood gay bar and drag queens appear briefly for only five seconds, contribute nothing of significance to the Series' storyline, and are used simply as aids in establishing the locale and cultural setting in which the Scene and the Series as a whole takes place. Such use is too fleeting to establish liability as a matter of law.

## VI.    CONCLUSION

For all of the foregoing reasons, the Court should dismiss Plaintiff's complaint in its entirety with prejudice.


DATED: July 19, 2023                    DAVIS WRIGHT TREMAINE LLP
                                        DIANA PALACIOS
                                        CRISTINA M. SALVATO
                                        JOEL L. RICHERT


                                        By:_____/s/ Diana Palacios_____
                                                  Diana Palacios

                                        Attorneys for Defendants
                                        NETFLIX, INC., TITMOUSE, INC.,
                                        LOL SEND, INC., FREMULON, LLC,
                                        UNIVERSAL TELEVISION LLC,
                                        HAZY MILLS PRODUCTIONS, INC.,
                                        and 3 ARTS ENTERTAINMENT, LLC

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

---

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this Memorandum contains 5,594 words, which complies with the word limit of L.R. 11-6.1 and this Court's standing order.

Dated: July 19, 2023

_____/s/ Diana Palacios_____

DAVIS WRIGHT TREMAINE LLP

Attorneys for Defendants
NETFLIX, INC., TITMOUSE, INC., LOL SEND, INC., FREMULON, LLC, UNIVERSAL TELEVISION LLC, HAZY MILLS PRODUCTIONS, INC., and 3 ARTS ENTERTAINMENT, LLC

MOTION TO DISMISS

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899